In re The **BENNETT FUNDING GROUP, INC., Debtor.**

**Richard C. Breeden, Trustee of the Bennett Funding Group, Inc., et al, Plaintiff,**

v.

**Erie Islands Resort & Marina, an Ohio Partnership; Erie Islands Resort & Marina, Inc.; John Gronvall; and Beverly Gronvall, Defendants.**

**No. 03–MC–06.**

United States District Court, N.D. New York.

April 28, 2003.

Hiscock, Barclay, Saperston & Day (Thomas F. Knab, Esq., of counsel), Buffalo, NY, for Plaintiff.

Byrne Costello & Pickard, P.C. (Terry R. Pickard, Esq., of counsel), Syracuse, NY, for Defendants.

## MEMORANDUM–DECISION and ORDER

HURD, District Judge.

### I.  INTRODUCTION

Defendants Erie Islands Resorts & Marina, Erie Islands Resort & Marina, Inc.,

John Gronvall, and Beverly Gronvall (collectively "defendants") filed objections pursuant to Bankruptcy Code 9033 to the Bankruptcy Court's (Stephen D. Gerling, Chief U.S. Bankruptcy Judge) January 2, 2003 Memorandum–Decision and Recommendation that defendants' motion for summary judgment seeking dismissal of the underlying Complaint on the ground that it is barred by the statute of limitations be denied. The plaintiff responded to those objections.

## II.  FACTS

The facts of this matter are set forth in the Bankruptcy Court's decision, familiarity with which is assumed. *See In re The Bennett Funding Group, Inc.,* 40 Bankr. Ct. Dec. 215, 2003 WL 174328 (Bankr. N.D.N.Y. Jan 28, 2003). The few facts pertinent hereto are as follows.

In September 1988, Resort Funding, Inc. ("RFI") agreed to extend Erie Islands Resort & Marina ("Erie") a line of credit. In October 1990, RFI and Erie entered into an amended agreement replacing the previously granted line of credit with a new line of credit. On or about December 20, 1991, RFI, Erie, and a third company entered into an agreement consolidating certain debts into a Consolidation Note (the "Consolidation Agreement"). (Def.'s Stmnt. of Mat. Facts at ¶ 1.) The Consolidation Agreement included a payment and amortization schedule setting forth Erie's payment obligations under the note. (*Id.* at ¶ 2.) The Consolidation Agreement also contained an acceleration clause providing that:

1. Pursuant to the September 30, 1998 Loan & Security agreement, an event of default included the situation where

    Lender fails to receive from Borrower when due and payable (i) any amount that Borrower is obliged to pay on the Note or (ii) any other payment due under the Documents; and such failure shall continue for

Should a Primary Event of Default occur and be continuing (as set forth in the Loan & Security Agreement dated September 30, 1998) or should an Event of Default occur (as set forth in the Master Lease Agreement dated September 8, 1989 or the Lease Agreements dated originally May 4, 1990) then the Lender, by notice to Borrow, may declare all payments due hereunder to be due and payable and same shall thereupon immediately become due and payable.

(Knab Aff., Ex. D.) [1]

The defendants failed to make the March 20, 1996 monthly installment payment. (Def.'s Stmnt. of Mat. Facts at ¶ 5.) On April 12, 1996, defendants were provided with written notice of default based on their failure to make the March 1996 payment. (*Id.* at ¶¶ 4, 5.) The demand also invoked the Consolidation Agreement's acceleration clause.

The instant action was commenced on April 11, 2002 in Bankruptcy Court seeking to recover the payments due under the Consolidation Agreement. This was more than six (6) years after the monthly default, but less than six (6) years after the acceleration demand.

## III.  STANDARD OF REVIEW

■ In reviewing a bankruptcy court's decision, a district court applies *de novo* review to conclusions of law. *In re Manville Forest Products Corp.,* 209 F.3d 125, 128 (2d Cir.2000); *In re Petition of Bd. of Directors of Hopewell Intern. Insurance Ltd.,* 275 B.R. 699, 703 (S.D.N.Y.2002); Fed. R. Bankr.P. 8013.[2]

    five (5) days after notice thereof to Borrower.

(Knab Aff., Ex. A.)

2. There being no dispute as to the pertinent facts, the instant matter only involves questions of law.

## IV. DISCUSSION

The sole issue presented pertains to the accrual of a cause of action for breach of an installment contract where the lender has exercised its right under an optional acceleration clause.[3] Defendants contend that pursuant to New York Civil Practice Law and Rules ("CPLR") § 206 and a statement in 18 S. Williston, Contracts § 2027 (3d ed.1978),[4] the statute of limitations runs from the date of the default upon which the election to accelerate is based (that is, the date when the first installment payment was missed, i.e. March 20, 1996); not from the date of the election to invoke the acceleration clause, i.e. April 12, 1996. Plaintiff counters that this matter is governed by CPLR § 213, and under the circumstances presented, the six year statute of limitations runs from the date of the demand for payment and invocation of the acceleration clause and was timely commenced on April 11, 2002.

### A. Phoenix Acquisition v. Campcore, Inc.

Before engaging in an analysis of CPLR §§ 213 and 206, it is instructive to discuss the New York Court of Appeals case of *Phoenix Acquisition Corp. v. Campcore, Inc.*, 81 N.Y.2d 138 141, 596 N.Y.S.2d 752, 612 N.E.2d 1219 (1993), the holding in which is dispositive of the dispute in this matter.[5] In *Phoenix*, the creditor loaned the debtor $500,000, which was to be repaid in installments. The promissory note contained a payment schedule. The promissory note also contained an acceleration clause that could be exercised at the creditor's option. The loan was guaranteed in part by a guarantor. In April 1983, the debtor defaulted on a payment. Thereafter, the debtor remained behind in its payments. In January 1988, the creditor exercised the acceleration clause. In 1990, the creditor commenced litigation against the creditor and guarantor for breach of contract. The guarantor claimed that the action was time-barred because the statute of limitations accrued in April 1983, the date upon the initial default on an installment payment. The New York Court of Appeals rejected this argument stating that:

> The contractual language fixes the boundaries of the legal obligation of the guarantor. Without acceleration of the entire debt by [the creditor], [the guarantor] was liable only for the payment of the installment which was due and payable and in default. The Statute of Limitations began to run only for that discrete obligation and amount. The fact that [the creditor] had a bargained-for, exclusive acceleration option to call the entire indebtedness due immediately upon any default does not, by operation of law, trigger the accrual of a cause of action for portions of the indebtedness which neither the debtor nor the guarantor were then liable to pay.

> By the terms of the promissory note and the term loan agreement between [the creditor] and [the debtor], payments of principal and interest became due and

---

3. Both sides agree that the statute of limitations is six years from the date of accrual. CPLR § 213.

4. Williston on Contracts § 2027 provides that "when the election is manifested, the statute will run from the date of default on which the election is based, not from the date of the election itself."

5. Although the Bankruptcy Court cited the *Phoenix* case, it apparently did not find the holding of that case to be dispositive of the instant matter. As will be discussed, the facts in *Phoenix* are virtually identical to this case and, as such, the resolution of that case should control here.

payable according to a specified repayment schedule. Unless [the creditor] exercised the acceleration option, the balance of the loan was not due and payable by the debtor.... The [guarantor's] guaranty is an explicit guaranty of "payment ... when due". Therefore, [the guarantor] became explicitly and contractually liable only for sums which were due and payable....

Demand and installment obligations are critically distinct ... and warrant different considerations and results under the Statute of Limitations microscope.... Had [the creditor] exercised its acceleration option following the April 1, 1983 default, it would have triggered an obligation by [the guarantor] to pay [the debtor's] entire indebtedness ... and interest. But [the creditor] chose not to do so. Thus, a crucial link in the chain of events surrounding the accrual of the creditor's claim was left disconnected.

*Phoenix,* 81 N.Y.2d at 141–43, 596 N.Y.S.2d 752, 612 N.E.2d 1219.

Although the *Phoenix* case did not specifically discuss CPLR § 206, it did involve the identical arguments that are made here. Similarly, while the Court of Appeals did not discuss § 2027 of Williston on Contracts, it disapproved of the conclusion espoused by that section of the treatise. Because the New York Court of Appeals rejected the argument that the cause of action accrues upon the initial default in an installment payment, it similarly must be rejected here. This is in accord with the numerous other cases and authorities holding that causes of action seeking to recover the entire contractual amount on installment contracts containing an optional acceleration clause do not accrue until the option is exercised. *See, e.g., Lavin v. Elmakiss,* 302 A.D.2d 638, 754 N.Y.S.2d 741 (3d Dep't 2003) ("The statute of limitations in a mortgage foreclosure action begins to run six years from the due date for each unpaid installment unless the debt has been accelerated; once the debt has been accelerated by a demand or commencement of an action, the entire sum becomes due and the statute of limitations begins to run on the entire mortgage"); *Chapman v. Franford,* No. CV 950536034, 1997 WL 219906, at *8 (Conn. Sup.Ct. April 24, 1997); *United States v. Feterl,* 849 F.2d 354 (8th Cir.1988); *United States Leasing Corp. v. Everett, Creech, Hancock & Herzig,* 88 N.C.App. 418, 363 S.E.2d 665, 669 (1988) ("The general rule in the case of an obligation payable by installments is that the statute of limitations runs against each installment individually from the time it becomes due, unless the creditor exercises a contractual option to accelerate the debt, in which case the statute begins to run from the date the acceleration clause is invoked."), *review denied,* 322 N.C. 329, 369 S.E.2d 364 (1988); *In re Hall,* 265 B.R. 435, 438–39 (Bankr. W.D.Mo.2001); *Holy Cross Church of God in Christ v. Wolf,* 44 S.W.3d 562, 566 (Tex. 2001); *United States v. Sather,* 131 F.Supp.2d 1146 (D.S.D.2001); *Federal Recovery of Washington, Inc. v. Wingfield,* 162 Or.App. 150, 986 P.2d 67 (1999); *Greene v. Bursey,* 733 So.2d 1111, 1114–1115 (Fla.Dist.Ct.App.1999); *Smith v. FDIC,* 61 F.3d 1552 (11th Cir.), *rehearing denied,* 71 F.3d 884 (1995); *Federal Nat'l Mort. Ass'n v. Mebane,* 208 A.D.2d 892, 893–94, 618 N.Y.S.2d 88 (2d Dep't 1994); *see also* Corbin on Contracts § 949; 81 N.Y.Jur.2d Negotiable Instruments § 704 (1989); *Johnson v. Rose,* 201 A.D.2d 771, 607 N.Y.S.2d 467 (3d Dep't 1994); *Higher Educ. Serv's Corp. v. Cadley,* 103 A.D.2d 908, 478 N.Y.S.2d 141 (3d Dep't 1984).

### B. CPLR §§ 213 and 206

An analysis of §§ 213 and 206 of the CPLR also compels the conclusion that plaintiff's cause of action accrued on the

date it elected to exercise the acceleration clause. Section 213 provides for a six year statute of limitations for breach of contract actions. *Cooper v. Parsky*, 140 F.3d 433, 441 (2d Cir.1998); 87 N.Y.2d 36, 45, 637 N.Y.S.2d 342, 660 N.E.2d 1121. "A cause of action to recover damages for breach of contract accrues when the breach occurs." *Carranza v. Prinz*, 240 A.D.2d 405, 658 N.Y.S.2d 1011 (2d Dep't 1997). Section 206(a), however, provides that "where a demand is necessary to entitle a person to commence an action, the time within which the action must be commenced shall be computed from the time when the right to make the demand is complete."

■ The Second Circuit has held that § 206(a) distinguishes between substantive and procedural demands. *Continental Cas. Co. v. Stronghold Ins. Co., Ltd.*, 77 F.3d 16, 21 (2d Cir.1996). A "substantive demand" is one that is essential to the plaintiff's cause of action. *Id.* "A 'procedural demand,' in contrast, is merely a prerequisite to commencement of an action in which a right to relief already exists, as, for example, the requirement that shareholders make a demand on the board of directors before commencing a derivative action." 2B Carmody–Wait 2d § 13:217 (2002). Section 206(a) only applies to these latter, procedural, demands. *Id.; Continental Cas. Co.*, 77 F.3d at 21.

■ Here, plaintiff was not entitled to sue on the entire Consolidation Agreement until it invoked the acceleration clause. *See Phoenix*, 81 N.Y.2d at 141, 596 N.Y.S.2d 752, 612 N.E.2d 1219. ("Without acceleration of the entire debt ... [the debtor] was liable only for the payment of the installment which was due and payable and in default."). Thus, defendants were under no duty to pay on the entire unpaid contract until plaintiff invoked the acceleration clause. *Id.* at 141–42, 596 N.Y.S.2d 752, 612 N.E.2d 1219 ("The fact that [the creditor] had a bargained-for, exclusive acceleration option to call the entire indebtedness due immediately upon any default does not, by operation of law, trigger the accrual of a cause of action for portions of the indebtedness which ... the debtor ... [was not] then liable to pay."); *see also Russack v. Weinstein*, 291 A.D.2d 439, 440, 737 N.Y.S.2d 638 (2d Dep't 2002) (206(a) inapplicable where, under terms of contract, there was no breach until 60 days after notice). Because defendants were under no duty to pay on the entire unpaid contract until plaintiff exercised its option under the acceleration clause, the demand in this case was substantive and § 206(a) is inapplicable. *See Continental Cas. Co. v. Stronghold Ins. Co.*, 866 F.Supp. 143, 144 (S.D.N.Y.1994), *aff'd*, 77 F.3d 16 (2d Cir. 1996). Accordingly, § 213 governs the resolution of this case.

Adopting defendants' argument would lead to absurd results. As the New York State Court of Appeals has stated:

> If a creditor's action against a guarantor [or debtor] accrues wholly and immediately at the point of the first default in payment—the six-year limitations period for any action against the guarantor [or creditor] clocking in at that point—then creditors would be left with no alternative or incentive but to accelerate the entire debt or risk losing all opportunities to pursue the guaranty [or debt]. The prudent commercial practice rule would keep in place incentives to the creditor to proceed with some flexibility in working with the debtor.... In that dynamic, for example, parties might be able to continue to work toward amicable and fair resolutions between themselves rather than immediately drawing litigation swords and marching off to a courthouse.

*Phoenix*, 81 N.Y.2d at 144, 596 N.Y.S.2d 752, 612 N.E.2d 1219. Such a result would

unduly burden creditors and debtors alike. It would also nullify the entire purpose of acceleration clauses, which is to benefit creditors. *See United States v. Feterl,* 849 F.2d 354, 357 (8th Cir.1988).

### V. *CONCLUSION*

CPLR § 206(a) is inapplicable and this matter is governed by CPLR § 213, which provides for a six year statute of limitations that under the facts of this case accrued from the date the acceleration clause was exercised, i.e. April 12, 1996. *Phoenix,* 81 N.Y.2d 138, 596 N.Y.S.2d 752, 612 N.E.2d 1219. This action was commenced on April 11, 2002, and is, therefore, timely.

Accordingly, it is

ORDERED that

1. The recommendation of the Bankruptcy Court is ADOPTED;

2. Defendants' motion for summary judgment is DENIED;

3. The defendants shall file and serve their answer on or before May 19, 2003;

4. The action is remanded to Bankruptcy Court.

IT IS SO ORDERED.